IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON OLIVER, | ) |
| Petitioner, | ) Civil Action No. 08 - 249 Erie |
| | ) Magistrate Judge Susan Paradise Baxter |
| v. | ) |
| FEDERAL BUREAU OF PRISONS; and FRANCISCO J. QUINTANA, Warden, | ) |
| Respondents. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Petitioner, Aaron Oliver, a federal prisoner currently incarcerated at the Federal Correctional Institution at Bastrop, Texas, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner contends that he is in custody in violation of the federal sentencing statutes because the federal Bureau of Prisons (BOP) improperly calculated his sentences by failing to give him prior custody credit. Specifically, Petitioner contends that he should be given federal sentence credit for time served in official detention prior to the commencement of his federal sentence from January 12, 1997 until December 1, 1999. He argues that, because this time should not have been credited against his state sentence, it must be treated as prior custody credit against his federal sentence. As demonstrated below, however, Petitioner's arguments lack merit because the BOP properly computed his federal sentence, including the date of commencement and his prior custody credit. Thus, his Petition will be denied. In addition, Petitioner's Motion Requesting Transfer back to the Western District of Pennsylvania (ECF No. 15) will be denied as moot.

### A. Relevant Factual and Procedural History

The record evidence reflects the following facts. On March 13, 1985, Petitioner was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 12 year

---

1. In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

term of imprisonment for Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (ECF No. 9-2, p. 13). On May 6, 1985, while Petitioner was serving his federal sentence, he was temporarily released to Pennsylvania state authorities for prosecution of a state criminal case. On May 22, 1985, Petitioner was sentenced by the Court of Common Pleas of Philadelphia County in criminal proceeding no. 8207-1347 to a term of imprisonment of from five (5) to ten (10) years for Aggravated Assault, to be served concurrently with Petitioner's federal sentence, and to a term of imprisonment of from two(2) to five (5) years for Possession of an Instrument of Crime, to be served consecutive to his federal sentence (ECF No. 9-2, p. 17). On June 13, 1985, Petitioner was sentenced by the Court of Common Pleas of Philadelphia County in criminal proceeding 8201-2565 to an aggregate term of imprisonment of from seven and one-half (7½) to fifteen (15) years for Manufacture, Delivery or Possession With Intent to Manufacture or Deliver a Controlled Substance, Criminal Conspiracy and Carrying Firearms Without a License in a Vehicle, all of which were to run concurrently with the federal sentence Petitioner was serving (ECF No. 9-2, p. 20).

On August 21, 1985, Petitioner was found guilty of a violation of his probation and was sentenced to a term of from one (1) to three (3) years, to be served concurrently with any other sentence Petitioner was serving (ECF No. 9-2, p. 22). On or about October 21, 1985, Petitioner was returned to USP Lewisburg.

On December 10, 1991, Petitioner completed serving his federal sentence that was imposed on March 13, 1985 (ECF No. 9-2, p. 25) and was released to the custody of Pennsylvania for completion of his state sentences. Petitioner served his state sentences from December 11, 1991 through December 10, 1993, when he was released from state custody on parole. In his Declaration in Opposition to Respondent's Motion for Dismissal (ECF No. 12-1) Petitioner declares that he absconded from state parole supervision on April 3, 1995.

On January 13, 1997, Petitioner was arrested by Pennsylvania law enforcement officers and charged with Criminal Conspiracy, Carrying Firearms without a License, Carrying Firearms on a Public Street, and Knowingly Possessing a Controlled Substance. On April 22, 1997, the Pennsylvania Board of Probation and Parole (the PA Board) lodged a Parole violator warrant against

2

Petitioner based on Petitioner's pending state charges. On May 12, 1997, the state charges of January 13, 1997 were dismissed (ECF No. 9-3, p. 2); however, Petitioner remained in state custody due to the state parole violator warrant. On August 14, 1997, the PA Board recommitted Petitioner to a state correctional institution as a technical parole violator (TPV) to serve six months of backtime (ECF No. 9-3, p. 9).

In the meantime, on June 4, 1997, a federal indictment was issued by the United States District Court for the Eastern District of Pennsylvania based on the charges set forth in the Pennsylvania arrest warrant dated January 13, 1997. On July 9, 1997, Petitioner was "borrowed" from state authorities pursuant to a federal writ of *habeas corpus ad prosequendum* and was returned to SCI Graterford on July 11, 1997. On September 2, 1997, Petitioner was again "borrowed" from state authorities pursuant to a federal writ of *habeas corpus ad prosequendum* and on December 11 and 12, 1997, he was found guilty by a jury in the United States District Court for the Eastern District of Pennsylvania of three counts of simple possession of heroin, marijuana and cocaine, and of possession of a firearm by a felon (ECF No. 9-3, pp. 11-12). On September 3, 1998, he was sentenced to a 292 month federal term of imprisonment followed by a five year term of supervised release. The federal sentencing court did not provide any specific instructions regarding the relationship of the federal sentence with the undischarged state sentence Petitioner was serving at the time the federal sentence was imposed. On September 14, 1998, Petitioner was returned to SCI-Graterford.

On February 10, 1998, the Pennsylvania Board recommitted Petitioner as a Technical Parole Violator (TPV) and ordered him to serve six months back time on his Pennsylvania sentences (ECF No. 21-1, p. 3). On April 23, 1999, the Pennsylvania Board recommitted Petitioner to serve the remainder of his unexpired maximum term and recalculated Petitioner's unexpired maximum term on his state sentences (ECF No. 9-3, p. 9). The Board's computation specifically states that his original maximum date was June 13, 2000 and that he owed five years, one month and five days backtime against his state sentence, effective May 27, 1997, with backtime credit of one month and five days, for time served between the date the detainer was lodged (April 22, 1997), and the date that he was officially returned to the Board (May 27, 1997) (ECF No. 9-3, p. 4). Of particular

importance is a notation "Time Lost Due To Delinquency: 2y 0m 19d"[2] and the recomputation of the maximum term of Petitioner's state sentence to July 2, 2002.[3]

On December 2, 1999, Petitioner was paroled from his state sentence to a federal detainer for service of his 292 month federal sentence. Petitioner's current sentence computation reflects that his current 292 month federal sentence commenced on December 2, 1999, the date that he was paroled from his state parole violator term, and that he received prior custody credit for the 100 days spanning January 12, 1997 (the date of his arrest) through April 21, 1997 (the day before the commencement of his state back time sentence). Assuming he receives all good conduct time available to him under 18 U.S.C. § 3585(b), his projected release date is November 4, 2020.

## B. Federal Sentence Calculation

The first bedrock principle that we must recognize in this case is that where an individual has committed crimes against two sovereigns, the issue of who has jurisdiction over him is a matter of comity between the two sovereigns. Ponzi v. Fessenden, 258 U.S. 254, 262 (1922). As to the federal government, the authority to exercise this comity rests with the Attorney General, and an individual may not complain about his decisions. *See* Poland v. Stewart, 117 F.3d 1094, 1098 (9th Cir.1997) ("It is the Attorney General's job to exercise the authority of the United States over federal prisoners. If [he] chooses to leave [an individual] in the custody of the State ..., neither [the individual] nor this court is in a position to say [he] lacks the authority under the Constitution to do so."); Bowman v. Wilson, 672 F.2d 1145, 1154 (3d Cir. 1982) (" '[t]he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner.' ") (quoting Derengowski v. United States, 377 F.2d 223, 224 (8th Cir.1967)) (alteration by quoting court). A corollary to this principle is that a determination as to concurrence

---

2. It is assumed that the delinquent time period (2 years and nineteen days) refers to the time Petitioner absconded from parole on April 3, 1995 through the date the Board's detainer was lodged on April 22, 1997.

3. On October 15, 2002, the Board issued a Final Discharge Letter to Petitioner stating that his state sentence expired on July 2, 2002 (ECF No. 9-3, p. 19).

of sentence made by one sovereign does not bind the other. A prisoner may not, by agreeing with the state authorities to make his sentence concurrent with a federal sentence, " 'compel the federal government to grant a concurrent sentence.' " Pinaud v. James, 851 F.2d 27, 30 (2d Cir. 1988) (quoting United States v. Sackinger, 704 F.2d 29, 32 (2d Cir.1983)).

The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. *See* Ponzi v. Fessenden, 258 U.S. 254 (1922). *See also* Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), *aff'd*, 100 F.3d 946 (3d Cir. 1996). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. *See, e.g.*, Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, *e.g.*, bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers, 920 F. Supp. at 622 (citations omitted). Producing a state prisoner under writ of *habeas corpus ad prosequendum* to answer federal charges does not relinquish state custody. Thomas v. Brewer, 923 F.2d 1361, 1366-67 (9th Cir. 1991); Salley v. United States, 786 F.2d 546, 547-48 (2d Cir.1986) (defendant produced and sentenced in federal court via writ of *habeas corpus ad prosequendum* did not begin to serve consecutive federal sentence until delivered into federal custody).

The Attorney General, through the Bureau of Prisons (BOP)[4], has responsibility for imprisoning federal offenders. *See* 18 U.S.C. § 3621(a). *See also* United States v. Wilson, 503 U.S. 329, 333 (1992); United States v. Ifeoluwa, 238 Fed. App'x 895, 900 (3d Cir. 2007). The interpretation of a statute by the agency charged with administering it is entitled to some deference,

---

4. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual (PS 5880.28), which is available in full on its website, www.bop.gov.

5

so long as its interpretation is not clearly erroneous or contrary to law or the constitution. Reno v. Koray, 515 U.S. 50, 60 (1995). Thus, the standard of review of the BOP's actions in crediting Petitioner's federal sentences is limited to determining whether the BOP abused its discretion. Espinoza v. Sabol, 558 F.3d 83, (1st Cir. 2009) ("Most circuits consider that the district court's review of a BOP decision about credits is for abuse of discretion."). Moreover, the BOP is presumed to follow the law and so it is Petitioner's burden to show otherwise in this Section 2241 petition and to show that the BOP abused its discretion in calculating Petitioner's sentences. *See, e.g.*, Garner v. Jones, 529 U.S. 244, 256 (2000) ("we presume the Board [of Pardons and Paroles of Georgia] follows its statutory commands and internal policies in fulfilling its obligations."); United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980) ("the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly.").

A federal prisoner's sentence calculation is governed by 18 U.S.C. § 3585, Calculation of a term of imprisonment. Paragraph (a) of the statute governs the date upon which a prisoner's sentence commences, and paragraph (b) governs credit he receives for time he spent in official detention prior to the date his sentence commenced. Thus, in any computation of a federal sentence, two separate decisions must be made: (1) when the federal sentence commences and (2) to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), *aff'd*, 100 F.3d 946 (3d Cir. 1996).

1. Commencement of a Federal Sentence

The date upon which a federal sentence commences is controlled by 18 U.S.C. § 3585(a), which provides as follows:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP has interpreted § 3585(a) such that it will not commence a federal sentence earlier than the date on which it was imposed. *See* PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). *See also* Rashid

v. Quintana, 372 Fed. App'x 260, 262 (3d Cir. 2010) ("A federal sentence commences when the defendant is received by the Attorney General for service of his federal sentence. *See* 18 U.S.C. § 3585(a). *See also* United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir. 1990). As a result, a federal sentence cannot begin to run earlier than on the date on which it is imposed."); DeMartino v. Thompson, Civil No. 96-6322, 1997 WL 362260 at *2 (10th Cir. July 1, 1997) ("Logically, a [federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served") (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). *See also* Rashid, 372 Fed. App'x at 2, n.7; Peterson v. Marberry, Docket Civil No. 07-56, 2009 WL 55913 at *3-5 (W.D. Pa. Jan.5, 2009) (citing PS 5880.28, Chapt. 1, Pages 12-13, and explaining in detail BOP policies regarding § 3585(a)).

The BOP has incorporated the common law primary custody doctrine into its polices. Thus, if the federal government has primary custody of an inmate on the date his federal sentence is imposed, the federal government is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate his federal sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

Thus, a threshold issue in determining the commencement date of a Federal sentence is whether the defendant was in primary Federal or primary non-Federal custody at the time the Federal sentence was imposed. If the defendant was in primary Federal custody, the Federal sentence will commence upon imposition. 18 U.S.C. § 3585(a). If, however, the defendant was in primary State or other non-Federal custody at the time the Federal sentence was imposed, the BOP must determine whether the Federal sentencing court expressly indicated its intent as to whether the federal sentence should run concurrently with, or consecutively to, the non-Federal sentence. 18 U.S.C. § 3584(a). If the Federal court expressly indicated an intention to have its sentence run concurrently with the non-Federal sentence, the Bureau of Prisons will designate the State correctional facility as the place for the defendant to serve his Federal sentence. In such cases, the Federal sentence will be deemed to commence upon imposition. *See* 18 U.S.C. §§ 3585(a), 3621(b). However, if the Federal

7

sentencing court was silent as to whether it intended its sentence to run concurrently, the court's silence will be construed as an intent to impose a consecutive sentence. 18 U.S.C. § 3584(a). In such cases, the Federal sentence will commence only when primary non-Federal custody over the defendant is relinquished. 18 U.S.C. § 3585(a).

Here, the federal court did not order that Petitioner's federal sentence was to be served concurrent with any state sentence. Therefore, although the state court had directed that the state sentence be served concurrently with "any other sentence," the BOP did not consider the sentences to be concurrent because the federal sentencing court had not so ordered. Pennsylvania did not relinquish jurisdiction over Petitioner prior to his federal sentencing date. Petitioner was brought before the federal court pursuant to a writ of *habeas corpus ad prosequendum* but primary jurisdiction over him remained vested in the state; no triggering event occurred to shift primary jurisdiction to the federal government.

Because Petitioner was in the primary custody of the state when his federal sentence was imposed, and because his federal sentence must be considered to have been imposed to run consecutive to any state sentence, he was returned to the state after his federal sentencing. As required by 18 U.S.C. § 3585(a), the BOP commenced Petitioner's federal sentence when Pennsylvania relinquished its priority and released him to federal custody on December 2, 1999 when he was paroled from his state sentence to the federal detainer.[5]

2. Prior Custody Credit

The second calculation in arriving at Petitioner's projected release date is whether he is entitled to any prior custody credit. Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides as follows.

> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the

---

5. *See* PS 5880.28, Chapt. 1, Pages 12-13, 31-33; *see also* PS 5160.05, Pages 2-12.

8

> defendant was arrested after the commission of the
> offense for which the sentence was imposed;
>
> That has not been credited against another sentence.

18 U.S.C. § 3585(b). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001)[6]; United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007); Chambers, 920 F. Supp. at 623 ("Section 3585 does not permit credit on a federal sentence for time served and credited against another sentence.").

In this case, Petitioner has submitted documentation that the BOP granted Petitioner 135 days prior custody credit for the time period from January 12, 1997, the day that he was arrested by state authorities, through May 27, 1997, the date he was recommitted by the Pennsylvania Board as a technical parole violator and ordered to serve six months back time with respect to his state sentence for which he had five years, one month and five days remaining. All of the time Petitioner served in official detention from May 27, 1997 through December 1, 1999 (the date his federal sentence commenced and he began receiving federal sentencing credit under § 3585(a)) was credited against his Pennsylvania sentence.[7] Therefore, the BOP was statutorily precluded from granting Petitioner with prior custody credit under § 3585(b) for any time he spent in official detention between those dates. Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence); Rios, 201 F.3d at 274 (statute governing award of credit for pre-federal incarceration does not permit credit on federal sentence for time served and credited against another sentence); Chambers, 920 F. Supp. at 623 ("Section 3585 does not permit credit on a federal sentence for time served and credited against

---

6. Rios was superseded by statute on unrelated grounds to the extent that the court applied a version of the United States Sentencing Guidelines § 5G1.3 prior to its amendment, effective November 1, 1995. *See* United States v. Saintville, 218 F.3d 246, 247 (3d Cir. 2000).

7. Actually, it appears that Petitioner received credit on his Pennsylvania sentence from April 22, 1997, the date the Board lodged its detainer against him. See ECF No. 21-1, p. 5.

another sentence.").

When he filed his Petition, Petitioner argued that Pennsylvania relinquished primary custody over him when he was "borrowed" by federal authorities pursuant to a Writ of *Habeas Corpus Ad Prosequendum*. It is well settled that a prisoner detained pursuant to a writ of *habeas corpus ad prosequendum* is considered to remain in the primary custody of the sending sovereign unless and until that sovereign relinquishes jurisdiction over the person. *See, e.g.*, Ruggiano v. Reish, 307 F.3d 121, 125 n. 1 (3d Cir. 2002). The sending sovereign retains primary custody and the receiving sovereign (in this case, the federal government) is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him. Id. Because the receiving sovereign merely obtains limited jurisdiction over the "borrowed" prisoner, the prisoner is still under the jurisdiction of the sending sovereign, and is considered to be in the custody of the sending sovereign not the receiving sovereign. Thus, when a defendant is borrowed from the primary custodian via a Writ of Habeas Corpus Ad Prosequendum, principles of comity require the return of the defendant to the primary custodian when the prosecution has been completed. Delima v. United States, 41 F. Supp. 2d 359 (E.D.N.Y. 1999), *aff'd*, 213 F.3d 625 (2d Cir. 2000).

Petitioner abandoned this argument in his Motion in Opposition to Motion for Dismissal and in Support of Summary Judgment (ECF No. 12). In that response, Petitioner claims that he is entitled to prior custody credit for the time period from January 12, 1997 through December 1, minus the six month back time sentence imposed by the Pennsylvania Board, because this time period could not have been credited to his Pennsylvania sentence according to Pennsylvania law.

According to the evidence of record, Petitioner was arrested by local authorities and remained in state custody until December 2, 1999. According to the Board's calculations, Petitioner owed five years, one month and five days backtime against his state sentence, effective May 27, 1997, the date that he was officially returned to the Board (May 27, 1997) (ECF No. 9-3, p. 4). Of particular importance is a notation "Time Lost Due To Delinquency: 2y 0m 19d" and the recomputation of the

maximum term of Petitioner's state sentence to July 2, 2002.[8]

Petitioner argues that the Pennsylvania authorities improperly recalculated his Pennsylvania sentences and, therefore, he should receive federal credit for the time period from January 12, 1997 through December 1, minus the six month back time sentence. He seems to be arguing that Pennsylvania could only hold him for six months because that is the back time sentence that was imposed by the Board. According to Pennsylvania law, however, when a prisoner is ordered to serve backtime as a parole violator, the prisoner loses his or her status as a "parolee" and has no right to be automatically released upon the expiration of the backtime established by the Board. *See* Johnson v. Pennsylvania Board of Probation and Parole, 110 Pa. Commw. 142, 532 A.2d 50, 53 (1987). When the Board imposes backtime, it is establishing a new parole eligibility date for the parole, in effect, a recomputed minimum term. Shaw v. Pennsylvania Bd. of Probation and Parole, 671 A.2d 290, 290 -292 (Pa. Commw. 1996); Krantz v. Pennsylvania Board of Probation and Parole, 86 Pa. Commw. 38, 483 A.2d 1044, 1048 (1984). A prisoner's sentence is his maximum sentence, not his minimum sentence, under Pennsylvania law. Petitioner has no entitlement to re-parole under the U.S. Constitution or Pennsylvania state law, regardless of how he behaved or what programs he completed while incarcerated. Thus, he had no automatic right to be re-paroled after serving the six months of backtime, given that he had over five unserved years on his original sentence. A prisoner ordered to serve backtime as a parole violator loses his status as a parolee and the Board can, in its discretion, require the prisoner to serve his remaining unexpired term. Cohen v. Horn, Civ. A. No. 97-7175, 1998 WL 834101, at *6 (E.D. Pa. Dec.2, 1998) (citing Brown v. Pa. Bd. of Prob. & Parole, 668 A.2d 218, 220 (Pa. Commw. 1995)). This is precisely what happened in Petitioner's case. *See* ECF No. 21-1, p. 5. As of May 27, 1997, he had five years, one month and five days remaining on his Pennsylvania sentence.[9] The Board recalculated his maximum term as expiring on July 2, 2002.

---

8. The time period from May 27, 1997 to July 2, 2002 equals 5 years, 1month and 5 days.

9. Specifically, Petitioner's Pennsylvania sentence was from 7½ to fifteen years, effective June 13, 1985 with a maximum date of June 13, 2000. Petitioner was deemed delinquent when he absconded from parole on April 3, 1995 through the date the Board's detainer was lodged on April 22, 1997. This delinquent time period (2 years and nineteen days) was added to his

(continued...)

He was released from that sentence on parole on December 2, 1999 and placed into federal custody to begin his federal sentence. He received notice that he completed his state sentence on July 2, 2002 as that sentence was imposed to run concurrent to his federal sentence. Because Pennsylvania credited Petitioner with the time period from May 27, 1997 though December 1, 1999, the BOP could not give Petitioner credit for this time period.

Petitioner argues that the Board misapplied the running of his sentences under Pennsylvania law. In support of this argument, he points to 61 P.S. 331.21a(a) for the proposition that he should have been required to have served his federal sentence before serving his back time sentence. This particular statute was recodified in 2010 as 61 Pa. Cons. Stat § 6138, and provides as follows.

> 61 Pa. Cons. Stat. § 6138 Violation of terms of parole
>
> (a) Convicted violators.--
>
>> (1) A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the board be recommitted as a parole violator.
>>
>> (2) If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and shall be given no credit for the time at liberty on parole.
>>
>> (3) The board may, in its discretion, reparole whenever, in its opinion, the best interests of the inmate justify or require the inmate's release on parole and it does not appear that the interests of the Commonwealth will be injured thereby.
>>
>> (4) The period of time for which the parole violator is required to serve shall be computed from and begin on the date that the parole violator is taken into custody to be returned to the institution as a parole violator.
>>
>> (5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed shall precede the commencement of the new term imposed in the following cases:
>>
>>> (I) If a person is paroled from a State correctional

---

9. (...continued)
original maximum date to result in a revised maximum date of July 2, 2002.

institution and the new sentence imposed on the person is to be served in the State correctional institution.

(ii) If a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison.

(iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

(6) Where the new term is to be served last or the balance of the term originally imposed is to be served last, and the service is, in either case, in any correctional facility:

(I) Any person upon recommitment shall be sent to the institution as shall be designated by the Secretary of Corrections or his designee.

(ii) Any female person shall be recommitted to the State Correctional Institution at Muncy.

(b) Subsequent arrest.--

(1) The formal filing of a charge after parole against a parolee within this Commonwealth for any violation of the laws of this Commonwealth shall constitute an automatic detainer and permit the parolee to be taken into and held in custody.

(2) The automatic detainer shall dissolve 15 days after the parolee is taken into custody unless sooner waived or otherwise superseded by direction of the supervising parole office.

(3) The automatic detainer shall be in addition to and not in lieu of any other detainer that prior to the effective date of this chapter may have been lodged in such circumstances.

(c) Technical violators.--

(1) A parolee under the jurisdiction of the board who is released from a correctional facility and who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime of which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere in a court of record, may be recommitted after a hearing before the board.

(2) If the parolee is so recommitted, the parolee shall be given credit for the time served on parole in good standing but with no credit for delinquent time and may be reentered to serve the remainder of the original sentence or sentences.

(3) The remainder shall be computed by the board from the time the parolee's delinquent conduct occurred for the unexpired period of the

maximum sentence imposed by the court without credit for the period the parolee was delinquent on parole. The parolee shall serve the remainder so computed from the date the parolee is taken into custody on the warrant of the board.

(4) The parolee shall be subject to reparole by the board whenever in its opinion the best interests of the inmate justify or require the parolee being reparoled and it does not appear that the interests of the Commonwealth will be injured reparoling the parolee.

(d) Recommitment.--A technical violator under subsection (c) shall be recommitted to a correctional facility as follows:

(1) If paroled from a county prison, to the same institution or to any other institution to which the violator may be legally transferred.

(2) If paroled from a State correctional institution, any male person upon recommitment shall be sent to the nearest State correctional institution for service of the remainder of the original term at the institution as shall be designated by the department. Any female person shall be recommitted to the State Correctional Institution at Muncy or other State correctional institution as designated by the department.

Petitioner cites to the provision set forth now in 61 Pa. Cons. Stat. § 6138(a)(5)(iii) (which contains the same language that previously was set forth in 61 P.S. § 331.21(a)), that provides that a convicted parole violator who is convicted of a federal crime must serve the new term for the latter (i.e. federal) crime before he shall commence service of the balance of the term originally imposed by the State. This provision, however, applies only to <u>convicted</u> parole violators - Petitioner was recommitted as a <u>technical</u> parole violator; therefore, the section he relies upon does not apply to him.[10] Rather, the service of his back time is governed by 61 Pa. Cons. Stat. 6138(c) as set forth

---

10. Had Petitioner been recommitted as a convicted parole violator, he would be serving a much longer sentence than he now is serving. First, Pennsylvania law requires that he would not have received any credit on his Pennsylvania sentences for the time he was at liberty. Second, Pennsylvania law requires that the time remaining on his original sentence (5y, 1m and 5 days) be served consecutive to his federal sentence. *See* <u>Commonwealth v. Zuber</u>, 466 Pa. 453, 353 A.2d 441 (1976) (holding that the Board may not impose a parole violation sentence to run concurrently with a new sentence for an offense committed while on parole); <u>Walker v. Pennsylvania Bd. of Probation and Parole</u>, 729 A.2d 634, 638 (Pa. Commw. 1999). <u>Harris v. Pennsylvania Board of Probation and Parole</u>, 38 Pa. Commw. 391, 393 A.2d 510 (1978). Thus, had Petitioner been recommitted as a convicted parole violator, he would have been required to serve his 292 month federal sentence first and, only when that sentence was completed, could he begin serving his time remaining on his Pennsylvania state sentence consisting of five years, one

(continued...)

above.[11]

For the foregoing reasons, Petitioner has not demonstrated that he is entitled to federal habeas corpus relief. An appropriate Order follows.

### **ORDER**

**AND NOW**, this 9th day of December, 2010;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion Requesting this Court to Order Petitioner Transfer Back to the Western District of Pennsylvania (ECF No. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

/s/ Susan Paradise Baxter
Susan Paradise Baxter
United States Magistrate Judge

cc:  AARON OLIVER
34582-066
FCI Bastrop
P. O. Box 1010
Bastrop, TX 78602

---

10. (...continued)
month and five days. In such a situation, he would have begun serving his federal sentence on January 12, 1997 and it would have expired (counting good time credit) on or about October 7, 2017. At that time, Petitioner would be required to begin serving his unexpired Pennsylvania sentence of 5 years, 1 month and five days, which would not expire until November 12, 2022. This is almost two years longer than his projected release date on November 4, 2020.

11. Moreover, to the extent that the Pennsylvania authorities misapplied Pennsylvania law, which does not appear to have occurred based on this record, Petitioner would be required to pursue such a challenge in state court against the Petitioner authorities allegedly responsible. This Court cannot require the BOP to award sentencing credit based on a claim that the Pennsylvania authorities misapplied their own law.

15